Herald A. O'Neill and G. Evelyn O'Neill, his wife v. Commissioner.
O'Neill v. Commissioner
Docket No. 67455. TC Memo. 1959-35.
United States Tax Court
T.C. Memo 1959-35; 1959 Tax Ct. Memo LEXIS 215; 18 T.C.M. (CCH) 168; T.C.M. (RIA) 59035; February 25, 1959
Herald A. O'Neill, pro se, 302 Colman Building, Seattle, Wash. George E. Constable, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent determined a deficiency in the petitioners' income tax for the calendar year 1953 in the amount of $4,483.28. Since the trial, at which time evidence was *216 introduced on the issue, respondent has conceded on brief that his determination that the petitioners realized rental income in the amount of $11,400 was erroneous. Therefore, the only issue to be decided is whether petitioners sustained in the taxable year a deductible abandonment loss on certain fallen timber. Findings of Fact Many of the facts relevant to the issue before us are set forth in Herald A. O'Neill, a Memorandum Opinion of this Court, filed October 11, 1957, on appeal C.A. 9, March 21, 1958, and the findings of fact in that opinion which are relevant here are hereby incorporated into these findings and are only briefly set forth. The petitioners, Herald A. O'Neill and G. Evelyn O'Neill, are husband and wife and reside in Seattle, Washington. They filed a joint income tax return on the cash basis for the calendar year 1953 with the district director of internal revenue at Tacoma, Washington. Herald is an attorney admitted to practice in the State of Washington and has practiced actively since 1930 through and including the year 1953. Eagle Timber & Mill Company (hereinafter referred to as Eagle Timber), was incorporated as a Washington corporation on October 22, 1946. The *217 incorporators were Herald, Phoebe, his first wife from whom he was divorced in 1951, and Tim Healy. The purpose of the corporation was to engage in a general logging, milling, plywood, timber, and lumber business. On September 4, 1946, Herald purchased certain timber property (hereinafter referred to as the Timber Property), from H.H. and Mildred Longenecker. In October 1946, the grantors executed a statutory warranty deed and bill of sale which named the Eagle Timber & Mill Company as grantee. The stated consideration for the conveyance was $10. The transfer of the Timber Property to Eagle Timber constituted a contribution of capital. On July 1, 1950, Eagle Timber was dissolved by operation of law for failure to pay its annual corporate license fees for a period of three years. It has had no legal corporate existence in the State of Washington since that date. During the period October 22, 1946, through July 1, 1950, Eagle Timber was a separate taxable entity. In September 1951, Herald delivered in escrow a deed to the Timber Property executed by Eagle Timber. This transaction was an attempt to sell the timber on the Timber Property for $15,000 net. The broker who attempted *218 to sell the Timber Property understood that he was dealing with a representative of the dissolved corporation, Eagle Timber. The attempt was not successful. On May 28, 1952, pursuant to negotiations between Herald and the H. & L. Timber Company, the latter offered Herald $11,500 for the timber on the Timber Property, but the sale was never closed. In Herald A. O'Neill, supra, we found further that: "In November and December of 1952, Herald negotiated with one Ward for the sale of the timber on the Timber Property. Ward offered Herald $2,000 for the timber, which offer Herald tentatively accepted. Ward gave Herald a check for $500 on December 4, 1952, as earnest money which check Herald promised to hold until the spring. At that time Ward looked at the timber again and decided not to go forward with the purchase. Herald never cashed the $500 check. * * *
"In 1953 the petitioners wrote off the $2,000 that Herald failed to collect from Ward as a result of the alleged sale in 1952 of the timber on the Timber Property. Herald stopped paying taxes on the Timber Property in 1953." The timber on the Timber Property which Herald first attempted to sell for $15,000 in September *219 1951 was hemlock. When Ward looked at the timber in the spring of 1953 he refused to pay the $2,000 he had offered previously because the timber had deteriorated in the meantime; it had been felled and bucked for several years. It was at this time that Herald decided to stop paying taxes on the Timber Property. On their return for the year 1953, petitioners explained the $2,000 deduction as follows: "Bad Debt from Transaction Entered into for Profit: "During the years from 1946 to 1951 taxpayer advanced money to Eagle Timber & Mill Company. "The company went broke and at the end of 1952 the anticipated recovery was $14,500.00. During 1953 it became apparent that the recovery would not exceed $12,500.00. Therefore, taxpayer claims an additional loss of $2,000.00 in 1953." The respondent disallowed the claimed loss because the petitioners had allegedly failed to establish a tax basis for the timber and failed to establish a complete bona fide sale in 1952. The timber had a fair market value on July 1, 1950, and at the end of 1952 of at least $2,000. The timber became worthless in 1953. Opinion The petitioners contend that they sustained a deductible loss on the timber *220 in the taxable year either as a loss on a bad debt or as a loss on a transaction entered into for profit. [1]
The respondent contends that, even if the petitioners' claim is not precluded by our previous decision, the petitioners have failed to prove an act of abandonment or any tax basis in the timber. We agree with the petitioners. It is true, as respondent contends, that in Herald A. O'Neill, supra, we held that the alleged loans to Eagle Timber were contributions of capital, thus sustaining the disallowance of the claimed bad debt deduction for the year 1952. The petitioners have introduced no new evidence here that even suggests any reason for altering that conclusion; therefore, they cannot prevail on their contention that they sustained a bad debt loss in the year 1953. However, in Herald A. O'Neill, supra, we further concluded that on July 1, 1950, Herald received the Eagle Timber assets, including the timber here in question, as a liquidating dividend upon which gain or loss would be recognizable, sections 111 and 115(c), and, *221 therefore, that the fair market value of the properties became at that time his adjusted basis. On the record in that case, we were unable to determine what that fair market value was; thus we sustained the disallowance of the claimed loss for the year 1952, being unable to find two items essential to the petitioners' case, namely, a tax basis and a closed transaction giving rise to the loss. In the instant case, however, the petitioners have introduced additional evidence which is sufficient to prove a fair market value on July 1, 1950, of at least $2,000. The timber in question was hemlock, which, as of the spring of the year 1953, had been felled and bucked for several years, and was deteriorating; it had so deteriorated that Ward, upon examining it at that time, refused to go through with the transaction. The process of deterioration was obviously irreversible, and quite rapid; in September 1951 Herald was attempting to obtain $15,000 for the timber; on May 28, 1952, he received an offer of $11,500 for this timber, yet in December of the same year, Ward was willing to offer only $2,000. Even assuming rather drastic market fluctuations, we are satisfied from this evidence that *222 the timber must have had a fair market value of at least $2,000 on July 1, 1950, and we have so found. Further, the timber became worthless by the end of 1953. In the spring of that year, Ward was no longer willing to pay $2,000 for the timber, the amount he had offered less than six months before. Approximately a year previously, another prospective buyer had offered Herald $11,500. The decline in value was extremely rapid. When Ward withdrew his offer in the spring of 1953, Herald wrote off the $2,000 that he thus failed to collect from Ward, and, according to his own testimony, "quit paying taxes on it and abandoned the property entirely." This evidence is uncontroverted. Considering the rapid deterioration of the timber as evidenced by the rapid decline in the amounts offered Herald for the timber, from $11,500 on May 28, 1952, to $2,000 in December of that year, and withdrawal of the $2,000 offer in the spring of the year 1953, with the other events tending to show that Herald considered the timber worthless and intended to abandon it in the year 1953, we have concluded that the timber in fact became worthless in 1953. Herald's investment in the timber was a transaction entered *223 into for profit; we do not understand the respondent to contend otherwise. The respondent's contention that the loss is a capital loss and thus limited by section 117 is obviously without merit. From all the evidence, we find that the timber had a value of $2,000 in 1952 and became worthless in the year 1953. The respondent's determination of a deficiency is in error, and the petitioners are entitled to their claimed deduction. Decision will be entered for the petitioners. Footnotes
1. Section 23(e)(2), Internal Revenue Code of 1939↩. All references to sections are to sections of the Internal Revenue Code of 1939.